DOWNEY, Judge.
Beach House Food Service, Inc. (Beach), filed a complaint for declaratory relief to construe the provision of a commercial lease between itself as lessee and Atlantic Boulevard, Ltd. (Atlantic) as lessor. From a final judgment in favor of Beach, Atlantic has perfected this appeal.
It appears that, while Beach was a lessee under a lease contract with Robert L. Kes-ter and Stewart R. Kester d/b/a R & S Properties, Beach and R&S Properties (R & S) entered into a new lease which is the lease in question in this case. Said lease provided for a rental during the first year of “$3150 per sq. ft. (based on new square footage).” Beach was authorized to construct an addition of approximately 2,000 square feet making the entire square footage of the restaurant on the property approximately 4,500 square feet. Prior to the sale of the property by R & S to Atlantic, Beach wrote a letter to R & S which stated:
As per our telephone conversation of this morning, October 2, 1987, I am submit *1169 ting this letter so it will be on file for future reference. The business lease agreement we entered into on August 28, 1987 between Robert Kester/Stewart Kester and Beach House Food Service, Inc. has a paragraph which leaves a few “grey areas” which could be interpreted several ways. As you know, the dollar amounts agreed to was based upon usable square footage. It was our mutual understanding that we would be charged and pay for square footage which have been “C.O.ed” (received Certificate of Occupancy) based upon figures and time periods on the lease. It is my intent to complete the restaurant addition as scheduled, but I do not wish to be penalized for delays beyond my control or cause damage to my on-going business. It is my hope that this letter would make our intent public record to all future and prospective new owners.
After taking title to the shopping center in which this property is located, Atlantic contended that Beach was required to pay rent of $3.50 per square foot on the entire 4,500 square feet, i.e., the present restaurant footage and the new footage then under construction. Unable to reach any agreement on the rent due, Beach commenced this suit.
Atlantic contends the language of the lease is plain and unambiguous and thus needs no construction by the court. Atlantic alternatively argues that if the lease provision is not definite and certain the lease must be deemed unenforceable. Beach has not favored us with a brief. However, resort to the record convinces us that there was substantial competent evidence before the trial court to support the judgment in favor of Beach.
Among other things, the record contains a pretrial stipulation of the parties which, under the heading “Issues of Law and Fact,” states:
It is the Plaintiffs contention that its Business Lease was modified with the then owners, R & S PROPERTIES, before transfer of title to the Subject Property occurred on March 15, 1988. Defendant admits that it was aware that the terms of the Business Lease had been varied by the prior owner but contends that it was assured that these variances would terminate as of the date of closing and would have no effect on the new purchaser.
The case was tried without a jury and final arguments were presented in writing. In its written summation, Beach states that its contention is that the lease contemplated rent based upon the existing square footage of approximately 2,500 square feet until such time as a certificate of occupancy was issued for the additional 2,000 square feet to be constructed. In support of that contention, Beach presented the following facts:
A. The Plaintiff had delivered to the prior owner a letter dated October 2, 1987 (a copy of which is attached and previously entered into evidence by the Plaintiff) which clarifies the parties [sic] intent that the new footage to be constructed would not be billed for rent until the C.O. was issued.
B. The prior owner, through the testimony of RANDY KESTER, admitted that he received the letter on or about October 2, 1987; that he never objected to the terms of the letter; that he continued to bill for the rent based on the old square footage through the time that he sold the property to the Defendant in March, 1988, and that he prepared and presented the estoppel information to the Defendant based on the old square footage.
C. HARRY GINSBURG, the agent for the Defendant and new owner, admitted in his testimony that they had received the estoppel information from Plaintiff prior to or at closing and that it reflected the old square footage (a copy of which is attached hereto and previously entered into evidence by the Plaintiff) and that he received the original October 2, 1987 letter at closing. He also admitted that the new owner never discussed the status of Plaintiffs rental payments with the Plaintiff before closing.
In short, the Plaintiff did everything possible to avert a misunderstanding con *1170 cerning this Lease and the rent due thereunder. The letter of October 2 provides that the Plaintiff wished the contents of the letter be made a matter of public record “to all future and prospective new owners.” There was certainly nothing in the actions of the prior owners, or of the Defendant as the new owner to give the Plaintiff cause to believe that the rental terms of the Lease as amplified in the October 2 letter were not effective. The Plaintiff, relying upon this justifiable assumption, committed itself to a TWO HUNDRED AND FIFTY THOUSAND DOLLAR ($250,000.00) construction project.
The pertinent part of defendant’s closing argument consists of a discussion of the plain wording of the lease and the law pertaining to the construction of agreements. With regard to Beach’s contentions the defendant’s written argument stated:
The mere fact that the Plaintiff delivered a letter which attempted to vary the terms of the lease is not sufficient to modify or change the terms. The parties did not act upon the information in the letter in that rent as an accomodation until the start of construction as testified to by Randy Kester was accepted in the sum of $966.00. The letter called for rent in the amount of $736.75. It is clear that the letter was not acted upon by either party.
The evidence which Beach adduced supports a finding that Beach and R & S construed their agreement to mean that Beach would pay rent on the original 2,500 square feet of restaurant space until the additional 2,000 square feet had been certified for occupancy. The prior owner, Kes-ter, admitted he received Beach’s letter of October 2, 1987 and never objected to its • terms; that he continued to charge rent based upon the original square footage right up to the time of the sale of the property to Atlantic. Beach furnished Atlantic with an estoppel letter showing the rent being paid was based upon the original square footage. Atlantic’s agent admitted he had received said estoppel information from Beach prior to closing as well as a copy of Beach’s letter of October 2, 1987 to R & S regarding the intent of the parties in the present lease provision.
Based upon the record presented, it appears to us that the trial court reached the correct conclusion and that no error has been demonstrated. Accordingly, the final judgment appealed from is affirmed.
ANSTEAD and WALDEN, JJ., concur.